267 P.2d 234

**STILTNER**

v.

**INDUSTRIAL COMMISSION et al.**

No. 5814.

Supreme Court of Arizona.

March 1, 1954.

Conner & Jones, Tucson, James M. Murphy, Tucson, for petitioner.

Robert E. Yount, Phoenix (John R. Franks, Donald J. Morgan and Robert K. Park, Phoenix, of counsel), for respondent.

PHELPS, Chief Justice.

This cause comes to us on certiorari. Petitioner, while employed by defendant M. M. Sundt Construction Company as a carpenter on August 11, 1947, sustained an injury to his back by accident arising out of and in the course of his employment. He was then 44 years of age and in good health. Upon making application to the Industrial Commission he was awarded compensation based upon a monthly wage of $284, the

amount he was earning at the time of his injury.

It will serve no useful purpose to pursue the course the case has taken through its various ramifications up to the date of the final findings and award made on June 10, 1953, affirming the findings and award previously made on November 5, 1952, wherein petitioner's physical functional disability was fixed at 30% and his loss of earning capacity at 50%. It is from the findings and award of June 10, 1953, that the writ of certiorari is prosecuted in this court.

It is the contention of petitioner, first, that the finding of the commission that he has suffered only a 50% loss of earning capacity finds no support in the evidence, and secondly, that the commission erred in not finding—in the alternative—that if petitioner was not entitled to compensation on the basis of total disability he should have been given a fourth operation for spinal fusion for the reason that the three previous spinal fusion operations had been failures and consequently had not placed petitioner in a position to return to a gainful occupation. We are not impressed with the second assignment.

Respondent predicates its defense primarily upon the proposition that when two equally honest and experienced medical witnesses reach opposite conclusions the commission must decide which is correct and the court has no authority to disturb its findings, and, secondly, upon the well-established rule that a claimant must affirmatively show by a reasonable preponderance of the evidence that he is entitled to compensation.

We agree with respondent that both of these propositions of law are too well established in this jurisdiction to require comment or to cite authorities supporting them.

The questions presented to us then are: (1) Is there a conflict in the evidence? and (2) Has petitioner sustained the burden of proof by a reasonable or fair preponderance of the evidence entitling him to compensation? Except as it may have a bearing upon the case history we are not required to go back of the report of Dr. Dixon bearing date March 11, 1953, and the report of the medical board consisting of Doctors Haines, Gans, Noon and McGrath, bearing date May 18, 1953, to look for conflicts in the medical testimony for it was upon this testimony that the commission made its final findings and award and upon which certiorari here is based.

In order to get the history of the entire case, however, we have read and reread the entire record including reports of previous attending physicians and medical boards and frankly we are unable to find a conflict in the medical evidence that would justify invoking the rule so heavily relied upon by respondent. True, Dr. Dixon recommended a fourth spinal fusion operation after an examination of special X-ray views as well as conventional views made subsequent to his previous examination of

petitioner in 1952. After having again examined petitioner and studied the X-rays, he stated that in his opinion a fourth spinal fusion operation was the only thing that would give petitioner permanent relief and allow him to return to a gainful occupation "except of the very mildest sedentary character."

The medical board in its examination of petitioner of May 18, 1953, had this to say under the heading of "Comments":

"This patient has already had three surgical attempts to arthrodese the spine and each attempt has succeeded in rendering the spine less mobile from L–2 to S–2. In spite of this, however, the patient has had increasing complaints with each operation. For this reason on May 5, 1952, this Board felt that subsequent attempts to obtain arthrodesis of the spine are contraindicated and the general physical functional disability was advised. We consider that a pseudarthrosis in the spine itself, is not a mandatory indication for spine fusion surgery, and we sincerely doubt that this patient would be significantly improved even though a firm spine fusion were obtained by X-ray evidence.

"For these reasons, we feel that the 30% general physical functional disability award previously recommended is correct and that further surgery is not indicated."

In other words they doubt if petitioner would be significantly improved even though a firm spinal fusion were obtained. This constitutes the only conflict in the evidence of the medical witnesses and whether a fourth spinal fusion would or would not be of benefit to petitioner is wholly immaterial here. The award of the commission was based upon its finding that petitioner had suffered a 50% loss of earning capacity as a result of his injury. So far as the record discloses the commission gave no consideration to the advisability of a fourth spinal fusion in arriving at their award. In any event, it had no probative value whatever for that purpose. All the doctors state in their reports that there was a lack of fusion between L–3 and L–4 of petitioner's spine, although there seemingly was a fusion from L–2 to S–2. In the report of the board of May 18, 1953, they say:

"We recognize the fact that he may not have a solid fusion at L–3 to L–1, but we feel that further attempts to obtain fusion by surgery are not warranted."

All the medical witnesses relate that petitioner told all of them he suffered all the time with pain in his back; that it had been getting worse within the past six or eight months; that his head hurt all the time beginning at the base of the skull and passing through to his forehead; that he could only remain on his feet 30 or 40 minutes before his back pained him so severely that he had to lie down; that he hadn't worked any for about eight months except to trim grass in his yard; that the last work

72

he did was for the Pima Lumber Company and then only a couple of hours each day; that this work required him to drive in his car to see prospective clients; that his back hurt very badly after getting in or out of the car and that he was not making any sales towards the last. The report of the medical board stated in addition to this that he told them he was able to earn only $40 or $50 per month with the Lumber Company *"and therefore he quit."* (Emphasis supplied.) The written testimony of petitioner presented by the board as a part of its report contains no such statement but conforms entirely with the statement of Dr. Dixon and with the testimony of petitioner given both before the medical board and previously, before the referee on October 15, 1952.

The record is barren of any testimony of anyone including the medical witnesses that petitioner was able to work at any kind of employment during the past several months. There is not the slightest intimation that petitioner is malingering. Upon recommendation of the medical board Dr. Beaton, psychiatrist, made an examination of the petitioner in November, 1951, and stated in his report to the commission that petitioner was not a psychoneurotic. He said his case was very difficult to evaluate. There might be a possibility, he said, that petitioner was suffering from some diffuse central nervous system disease but he made no definite finding of any mental abnormalities. No further psy-

chiatric examination was requested. There is no suggestion of mental quirks that are sometimes found in cases of this kind.

The petitioner testified before Referee Robert Pickrell October 15, 1952, and stated under oath in substance just what he told Doctor Dixon on March 11, 1953, and the medical board on May 18, 1953, concerning his physical condition and his inability to work. There is not one scintilla of evidence to the contrary. And while the commission is not bound to believe the uncorroborated testimony of petitioner it may not arbitrarily reject uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances of the case casts suspicion upon it. Otero v. Soto, 34 Ariz. 87, 267 P. 947; Korff v. Charles Luke Const. Corporation, 69 Ariz. 312, 213 P.2d 471. We find nothing intrinsic in the evidence or extrinsic in the circumstances of the case that casts any suspicion whatever upon petitioner's testimony. We feel that he has fully sustained the burden of proof that he is physically unable to do any kind of work in his present condition.

We are further of the view that there is no material conflict in the evidence and that there is no evidence to support the finding of the commission of only a 50% loss of earning capacity.

Award set aside.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.